## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division



**VELOCITY MICRO, INC.,**

      **Plaintiff,**

v.

**J.A.Z. MARKETING, INC.,**

**and**

**JOHN HERTENSTEINER**

      **Defendants.**

Case No. 3:11cv473

## COMPLAINT

Plaintiff, Velocity Micro, Inc. ("Velocity Micro"), by counsel, for its Complaint against Defendants, J.A.Z. Marketing, Inc. ("J.A.Z.") and John Hertensteiner ("Hertensteiner," and collectively, the "Defendants"), states as follows:

## INTRODUCTION

1.  This action seeks to halt the conduct of the Defendants, who, after receiving notice that J.A.Z.'s contract with Velocity Micro was being terminated pursuant to the plain terms of the agreement, have embarked on a campaign to injure Velocity Micro's reputation with its customers through a series of false statements and accusations.

2.  The Defendants' conduct has had (and continues to have) a negative and likely irreparable impact on Velocity Micro's reputation and interests, with at least one major supplier appearing likely to terminate its relationship with Velocity Micro on the basis of the false representations made by the Defendants.

3.  Despite demands that the Defendants cease and desist their pattern of conduct, the Defendants have refused to do so, instead threatening Velocity Micro with litigation and a severe

disruption of its customer relationships if Velocity Micro does not reinstate the prior contractual relationship and pay $5 million to J.A.Z.

4.      Velocity Micro seeks to enjoin the Defendants' conduct, both preliminarily and permanently, and to recover the damages that it has incurred as the result of Defendants' wrongful conduct.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 in that the matter arises under federal law and the parties are citizens of different states with the matter in controversy exceeding $75,000, exclusive of interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims are occurring and/or are threatening to occur in this district and in this division, and the Defendants are subject to personal jurisdiction in this district and division.

## PARTIES

7.      Velocity Micro, Inc. is a Virginia corporation with its headquarters in Richmond, Virginia.  Velocity Micro is one of the premier high-performance computer providers in North America.

8.      Velocity Micro is the owner of trademark Registration No. 3185459 for the trademark VELOCITY MICRO for "computers and computer peripherals; namely, monitors, keyboards, printers, mice, CPUs, data processors, modems, hard and floppy drives, tape drives, DVD drives, CD drives, cards with integrated circuits and memory expansion modules, memory boards and computer chips, computer cables and plug-in connectors, software for operating computer games, digital video editing, and graphic design, and instruction manuals sold together as a unit" and the goodwill of its business associated therewith.

2

9.      J.A.Z. Marketing, Inc. is a Minnesota company located in Watertown, Minnesota. Through its contracts, J.A.Z. provides promotional and marketing services to its clients.

10.      John Hertensteiner is a resident of Minnesota.  At all relevant times, Hertensteiner has been acting in the course and scope of his employment as the founder and President of J.A.Z.

## FACTS

### The July 2008 Sales Representative Agreement Between J.A.Z. and Velocity Micro

11.      Among the products and services it provides, Velocity Micro is the exclusive sales representative in the United States for an affiliated company, Velocity Micro Electronics, Inc. ("VME"), which manufactures and assembles computers and computer peripherals for sale throughout the world.

12.      On July 1, 2008, Velocity Micro and J.A.Z. entered into a National Sales Representative Agreement (the "Agreement'), whereby J.A.Z. was retained by Velocity Micro as an independent sales representative to promote, market and sell Velocity Micro's products and services, including the products manufactured by VME for which Velocity Micro is the exclusive sales representative in the United States.  **Exhibit A.**

13.      Under the Agreement, J.A.Z. pledged to use its "best efforts" to provide "logistical support, promotional, selling and marketing services" to Velocity Micro.  Ex. A ¶ 5.

14.      For these services, Velocity Micro paid J.A.Z. "a commission rate of 2.5% of the final net collected invoice amount after all allowable deductions, discounts, or rebate accruals." Ex. A. ¶ 4.

15.      The Agreement contained a "Term and Termination" provision, which provided:

This Agreement, after twelve months from the above Agreement date, can be terminated in any Sub-Territory, for any reason, on ten days written notice, and termination to become effective thirty days thereafter.  Termination of a sub in any Territory shall not sever said Sub-Territory from this Agreement. **Termination of this Agreement in total shall become effective thirty days from receipt of the written notice as stipulated herein.**  Commissions shall be

3

> payable for shipments made within thirty days thereafter.  This Agreement will renew automatically one year from the effective date of this Agreement first written above unless terminated by either party as stipulated herein.

Ex. A ¶ 7.1 (emphasis added).

16.     The Agreement contained a choice of law provision stating that it "shall be governed by the laws of the State [sic] of Virginia, United States of America." Ex. A ¶ 10.5.

17.     The Agreement also provided that Velocity Micro "reserves all rights to the trade names and trademarks and to any other commercial symbols that it may adopt from time-to-time." Ex. A ¶ 2.

18.     Additionally, under the Agreement, J.A.Z. and Velocity Micro pledged to not, either directly or indirectly, "use or disclose, or cause to be used or disclosed, any trade secret, confidential information or proprietary information acquired by either party during its relationship with one another." Ex. A ¶ 8.

19.     Further, under the Agreement, if either party is required to "retain the services of any attorney, or other resource, to enforce or otherwise litigate or defend any matter or claim arising out of or in connection with this Agreement, then the prevailing party shall be entitled to recover from the other party, in addition to any relief awarded or granted, its reasonable costs and expenses, including attorney's fees, incurred in the proceeding." Ex. A ¶ 10.8.

20.     The Agreement was signed by Hertensteiner on behalf of J.A.Z. Ex. A at p. 6.

21.     Velocity Micro and J.A.Z. operated under this Agreement until July 2011, with Velocity Micro always remitting payment to J.A.Z. consistent with the terms of the Agreement.

22.     From July 2008 through the present date, J.A.Z. and Velocity Micro entered into no other agreement, whether written or oral.

**Velocity Micro's July 5, 2011 Termination of the Agreement**

23.     On July 5, 2011, Randall Copeland ("Copeland"), President and CEO of Velocity

Micro, terminated the Agreement by written notice pursuant to paragraph 7.1.  Copeland wrote

to J.A.Z., stating, in relevant part:

> I appreciate the past several years working with you and Jaz Marketing.  Going
> forward, we have concluded that Velocity Micro needs to change the direction of
> our sales strategy and retail management.
>
> In accordance with our contract dated June 30, 2008, which has since expired,
> Velocity Micro Inc. hereby terminates our business relationship and agreements
> with Jaz Marketing, Inc. (Jaz), effective immediately.  My hope is that we make
> this transition amicably, and we focus on doing what is best for the retail
> community that we both will continue to serve.

**Exhibit B.**

24.     That same day, J.A.Z., through Hertensteiner, responded to Velocity Micro,

stating that Velocity Micro and Foxconn Technology Group ("Foxconn"), a supplier of Velocity

Micro that had previously worked with J.A.Z. on behalf of Velocity Micro, would "have issues"

if the termination of the Agreement was not rescinded.  **Exhibit C.**

25.     On July 6, 2011, Velocity Micro responded to J.A.Z., stating:

> While we understand your dissatisfaction, I don't think we understand why you
> feel that this end of our business relationship is somehow worthy of litigation as
> you have threatened numerous times.  If you have any contracts or written
> agreements that make this decision disputable, please send them to me
> immediately.  Nobody is trying to cheat you, but we all have businesses to run
> and decisions to be made.

**Exhibit D.**

26.     Later that same day, and in response, J.A.Z., through Hertensteiner, threatened

Velocity Micro as follows:

> Randy, what you did yesterday by sending a letter/email to the JAZ retailers really
> worked against you and VME.  The retailers came right to me and the reps (they
> trust the reps and JAZ.  I have discussed a plan with [Foxconn] that allows us all
> to "save face" and win...if not I will today take a coarse [sic] that will not be
> accepted by the retailers.

**Exhibit E.**

27.     On July 7, 2011, counsel for J.A.Z. wrote to officials at Velocity Micro, Foxconn,

and VME stating:

> This letter is your notice of claim and notice of intent to pursue litigation.
>
> I have reviewed a February 22, 2011 Sales Agreement ("Sales Representative Agreement") between Velocity Micro Electronics, Inc. and J.A.Z. Marketing, Inc. I have also reviewed a July 5, 2011 communication from Mr. Randall P. Copeland to my clients' retail customers, which communication purports to terminate the Sales Representative Agreement.
>
> Preliminary information suggests that Mr. Copeland and VME have chosen to widely disseminate the purported termination notice to the U.S.A. electronics trade, all to the detriment of my clients' reputation in the electronics market place.
>
> My clients believe that Mr. Copeland's purported notice of termination notice, among other things, is not in compliance with the specific terms of the Sales Representative Agreement; that it was issued without the proper authorization of the owners and management of VME; that it constitutes tortious interference with JAZ's Sales Representative Agreement; that it, by implication, wrongfully disparages my clients; and that they have thereby suffered monetary damages.

**Exhibit F** at pp. 1-2.

28.     Counsel for J.A.Z. further warned that if it were to commence litigation against

Velocity Micro, such action would "necessarily include deposing the purchasing executives" of

Velocity Micro's major customers, thereby significantly upsetting Velocity Micro's relationships

with such customers.  Ex. F at p. 2.

29.     To avoid litigation, J.A.Z. demanded that Velocity Micro notify "retailers that the

purported notice termination of the Sales Representation Agreement was issued in error and has

been rescinded."  *Id.*

30.     J.A.Z. also demanded that Velocity Micro, along with Foxconn and VME, pay $5

million to J.A.Z.

31.    On July 11, 2011, Velocity Micro responded by letter to J.A.Z., stating that: (1) Velocity Micro had acted in accordance with the plain terms of the termination provision of the Agreement; (2) the February 22, 2011 "agreement" referenced in the July 7, 2011 letter was *not* the subject of the July 5, 2011 email from Copeland; (3) the February 22, 2011 "agreement" was in fact rejected and never executed by J.A.Z.; (4) Velocity Micro was not a party to the February 22, 2011 draft contract; (5) the July 5, 2011 email was not in any way defamatory or disparaging; and (6) there was no basis for claiming "tortious interference" with the unexecuted February 22, 2011 draft agreement or the July 2008 Agreement. *See* **Exhibit G.**

32.    Velocity Micro also demanded that J.A.Z. immediately cease all communications with Velocity Micro's customers and suppliers, including Foxconn and VME, both of whom had been copied on the July 7, 2011 letter from counsel for J.A.Z. *Id.* at p. 3.

**J.A.Z.'s Ongoing Interference With Velocity Micro's Customer Relationships**

33.    From July 5, 2011 through the present, the Defendants and their representatives have engaged in series of damaging communications with Velocity Micro's customers.

34.    On information and belief, J.A.Z., through Hertensteiner, has told Velocity Micro's customers that Velocity Micro: (1) breached its contract with J.A.Z.; (2) tortiously interfered with J.A.Z.'s contractual relationships; and (3) disparaged J.A.Z. as an entity.

35.    J.A.Z., through Hertensteiner, has also informed certain customers of Velocity Micro that J.A.Z. remains the marketing representative for Velocity Micro, notwithstanding Velocity Micro's termination of the Agreement.

36.    The nature and extent of the Defendants' ongoing communication with Velocity Micro's customers is uniquely known to the Defendants. Nevertheless, certain communications have been made known to Velocity Micro.

37.     For instance, Hertensteiner and counsel for J.A.Z. have copied both VME and Foxconn representatives on their emails and letters in which they accuse Velocity Micro of breach of contract and other intentional tortious conduct, damaging Velocity Micro's commercial relationship with Foxconn, and VME.

38.     Velocity Micro has also learned that J.A.Z., through Hertensteiner, has also contacted Newegg.com, OfficeMax, and Sears, all of which are important and longstanding customers of Velocity Micro, stating or implying that Velocity Micro's "attempted" termination of the Agreement was legally ineffective, and making the false claim that J.A.Z. remains the marketing representative for Velocity Micro and VME.

39.     Moreover, on July 19, 2011, J.A.Z., through Hertensteiner, sent a "mass" email to the customers of Velocity Micro, purporting to "set the story right" regarding the Termination of the Agreement through a litany of misstatements, and vowing to "not back down from a fight" with Velocity Micro if the contractual relationship was not restored.

40.     The July 19, 2011 email also disseminated confidential information, including information regarding Velocity Micro's relationship with VME and Foxconn that J.A.Z. had acquired during its relationship with Velocity Micro.

## COUNT I
### (Tortious Interference with Prospective Business Advantage)

41.     Velocity Micro re-alleges the allegations of paragraphs 1 through 40 as if set forth fully herein.

42.     Velocity Micro has present business relationships with suppliers such as Foxconn and VME, as well as many customers for its products, including, among others, Newegg.com, OfficeMax and Sears.  These relationships have persisted due to the mutual satisfaction of the parties.

43.     Due to the express satisfaction of its suppliers and customers, Velocity Micro has a reasonable expectation of prospective economic advantage with its customers.

44.     As a result of their prior relationship with Velocity Micro, the Defendants have knowledge of Velocity Micro's reasonable expectation of prospective economic advantage with its suppliers and customers.

45.     Through the Defendants' false and damaging statements to Velocity Micro's suppliers and customers, including Defendants' allegations of unlawful and tortious conduct, threats of litigation, and its claim that J.A.Z. remains the marketing representative for Velocity Micro, Defendants have wrongfully interfered with Velocity Micro's reasonable expectation of prospective economic advantage.

46.     The economic advantage to Velocity Micro from its continuing relationships with its suppliers and customers would persist into the indefinite future if not for the actions of the Defendants.

47.     The actions of the Defendants are likely to cause irreparable harm to Velocity Micro through the loss of supplier and customer relationships and diminished goodwill in the industry.

48.     J.A.Z. is liable for the tortious actions of Hertensteiner because Hertensteiner undertook the actions described herein in the course and scope of his employment with J.A.Z. and while acting for the direct benefit of J.A.Z.

## COUNT II
### (Defamation)

49.     Velocity Micro re-alleges the allegations of paragraphs 1 through 48 as if set forth fully herein.

50.     By publishing, among others, the contents of the July 7, 2011 letter to Foxconn and VME, the Defendants intended to falsely state or imply – and did, in fact, falsely state or

imply – that Velocity Micro had breached the terms of the Agreement, had tortiously interfered with the business of J.A.Z., and had disparaged J.A.Z.

51.    By communicating with customers of Velocity Micro, including but not limited to OfficeMax, Sears, and Newegg.com, the Defendants intended to falsely state or imply – and did, in fact, falsely state or imply – that it remained the marketing representative for J.A.Z. under the terms of the Agreement, despite the statements by Velocity Micro to the contrary.

52.    By publishing, among others, the contents of the July 19, 2011 email to Velocity Micro's customers, the Defendants intended to falsely state or imply – and did, in fact, falsely state or imply – that Velocity Micro had breached the terms of the Agreement and had acted in bad faith.

53.    The Defendants' false statements were defamatory *per se* because they tend to affect the business of Velocity Micro by imputing to Velocity Micro an unfitness to perform the duties of its professional business and a want of integrity in the discharge of its business relationships.

54.    The statements made by the Defendants were drafted and published for the purpose of injuring Velocity Micro because they were designed to damage the credibility, reputation, and customer relationships of Velocity Micro in an attempt to leverage a monetary payment and the restoration of the terminated contractual relationship between Velocity Micro and J.A.Z.

55.    The Defendants harbored ill will, spite, and common law malice in sending the July 7, 2011 letter, as well as in its communications with the other customers of Velocity Micro.

56.    The statements made by the Defendants were malicious and published and re-published with knowledge of their falsity or were made so recklessly as to amount to a willful

disregard for the truth. Any privilege otherwise associated with the statements made by the Defendants was abused and is of no effect.

57.     As a direct and proximate result of the statements made by the Defendants, damages are presumed and have been actually incurred.

58.     The actions of the Defendants are also likely to cause irreparable harm to Velocity Micro through the loss of customer relationships and diminished goodwill in the industry.

59.     J.A.Z. is liable for the defamatory actions of Hertensteiner pursuant to the doctrine of *respondeat superior* because Hertensteiner undertook the actions described herein in the course and scope of his employment with J.A.Z. and while acting for the direct benefit of J.A.Z.

## COUNT III
### (Breach of Contract)

60.     Velocity Micro re-alleges the allegations of paragraphs 1 through 60 as if set forth fully herein.

61.     The Agreement between Velocity Micro and J.A.Z. is a valid and enforceable contract.

62.     J.A.Z. materially breached its obligations under the Agreement by disclosing confidential information about Velocity Micro to its customers through the mass publication of the July 19, 2011 email.

63.     As a direct and proximate result of the breach of contract by J.A.Z., Velocity Micro has been damaged.

64.     J.A.Z. is liable for the actions of Hertensteiner breaching the terms of the Agreement because Hertensteiner undertook the actions described herein in the course and scope of his employment with J.A.Z. and while acting for the direct benefit of J.A.Z.

## COUNT IV
### (Federal Trademark Infringement)

65.     Velocity Micro re-alleges the allegations of paragraphs 1 through 65 as if set forth fully herein.

66.     Since at least 2006, Velocity Micro has provided its services under a distinctive, federally registered trademark: VELOCITY MICRO, U.S. Registration No. 3185459.

67.     VELOCITY MICRO is a registered trademark used for computers and computer peripherals and owned by Velocity Micro.

68.     Velocity Micro's federal trademark registration gives the company the exclusive right to use those marks subject to such registration throughout the United States.

69.     Velocity Micro has advertised the Velocity Micro® trademark.

70.     The Defendants' use of the VELOCITY MICRO Mark in their marketing activities after the termination of the Agreement is likely to cause confusion or to cause mistake, or to deceive, and constitutes an infringement of Velocity Micro's federal trademark rights in its registered trademarks and service marks in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

71.     The Defendants' actions have damaged Velocity Micro and its business.

72.     Unless preliminarily and permanently enjoined, the Defendants' conduct will cause Velocity Micro irreparable harm for which there exists no adequate remedy at law.

73.     Velocity Micro is entitled to recover from the Defendants all damages Velocity Micro has sustained due to the Defendants improper conduct, as well as the Defendants' profits obtained from its infringing conduct, in an amount to be proved at trial and to be trebled, pursuant to 15 U.S.C. § 1117.

74.     The Defendants' actions are willful and deliberate and amount to exceptional circumstances, justifying an award of attorneys' fees to Velocity Micro pursuant to 15 U.S.C. § 1117.

75.     J.A.Z. is liable for the infringing actions of Hertensteiner because Hertensteiner undertook the actions described herein in the course and scope of his employment with J.A.Z. and while acting for the direct benefit of J.A.Z.

**COUNT V**
**(Common Law Trademark Infringement)**

76.     Velocity Micro re-alleges the allegations of paragraphs 1 through 76 as if set forth fully herein.

77.     Velocity Micro has prior and exclusive rights to use its VELOCITY MICRO trademark to identify, market, promote and sell its products.

78.     The Defendants' unauthorized use of the VELOCITY MICRO Mark in their marketing activities has created a likelihood of confusion, mistake or deception, and therefore infringes on the VELOCITY MICRO trademark in violation of the common law of the State of Minnesota and the Commonwealth of Virginia.

79.     The Defendants' actions have damaged Velocity Micro and its business.

80.     The Defendants are entitled to recover its damages from Velocity Micro in an amount to be proved at trial.

81.     Unless preliminarily and permanently enjoined, the Defendants' conduct will cause Velocity Micro irreparable harm for which there exists no adequate remedy at law.

82.     J.A.Z. is liable for the infringing actions of Hertensteiner because Hertensteiner undertook the actions described herein in the course and scope of his employment with J.A.Z. and while acting for the direct benefit of J.A.Z.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Velocity Micro, Inc., respectfully requests the Court to grant it the following relief:

1.      A preliminary injunction barring the Defendants from communicating with any present or future supplier, retailer, or customer of Velocity Micro, including both Foxconn and VME, either stating or implying that: (1) Velocity Micro breached the terms of the Agreement; (2) Velocity Micro tortiously interfered with the business of J.A.Z. by informing its customers of the termination of the Agreement; (3) Velocity Micro defamed or disparaged J.A.Z. by informing its customers of the termination of the Agreement; and (4) J.A.Z. remains the marketing representative for Velocity Micro or is otherwise entitled to represent or act for Velocity Micro or VME;

2.      A permanent injunction barring the Defendants from communicating with any present or future supplier, retailer, or customer of Velocity Micro, including both Foxconn and VME, either stating or implying that: (1) Velocity Micro breached the terms of the Agreement; (2) Velocity Micro tortiously interfered with the business of J.A.Z. by informing its customers of the termination of the Agreement; (3) Velocity Micro defamed or disparaged J.A.Z. by informing its customers of the termination of the Agreement; and (4) J.A.Z. remains the marketing representative for Velocity Micro or is otherwise entitled to represent or act for Velocity Micro or VME;

3.      Compensatory, presumed, and treble damages of at least $75,000 in an amount to be proved at trial;

4.      Its reasonable attorney's fees and costs, both under the terms of the Agreement and pursuant to 15 U.S.C. § 1117;

5.      Punitive damages in the amount of $350,000; and

6.     Such other and/or additional relief as equity and the nature of the case may require.

**VELOCITY MICRO, INC.**

By _____
         Of Counsel

Dabney J. Carr, IV, Esq. (VSB No. 28679)
Timothy J. St. George (VSB No. 77349)
TROUTMAN SANDERS LLP
*Counsel for Velocity Micro, Inc.*
Post Office Box 1122
Richmond, VA  23218-1122
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
dabney.carr@troutmansanders.com
tim.stgeorge@troutmansanders.com

15