**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**VELOCITY MICRO, INC.,**

       **Plaintiff,**

**v.**

                                         **Case No. 3:11cv473 (JAG)**

**J.A.Z. MARKETING, INC.,**

**and**

**JOHN HERTENSTEINER**

       **Defendants.**

## MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*

Velocity Micro, Inc. and Randall P. Copeland (collectively, "Velocity Micro"), by counsel, for their memorandum in support of their Motion *in Limine* state as follows.

### INTRODUCTION

Velocity Micro brings this motion to exclude six types of inadmissible evidence from trial.  First, Velocity Micro asks the Court to hold both J.A.Z. Marketing, Inc. ("J.A.Z.") and John Hertensteiner ("Hertensteiner," and collectively, "Defendants") to their admission in their Answers that Defendants continued to represent to various third parties that J.A.Z. remained the marketing representative for Velocity Micro after the termination of the Sales and Marketing Agreement (the "Agreement").  Second, Velocity Micro seeks to prevent J.A.Z. from making any claim that it is contractually entitled to receive commission payments from Velocity Micro under the terms of an unexecuted contract to which Velocity Micro is not even alleged to have been a putative party, and which this Court has already held to be without any force or effect.  Third, Velocity Micro seeks to exclude certain "sales" data proposed to be introduced by J.A.Z. at trial as prejudicial hearsay.  Fourth, Velocity Micro seeks to exclude any argument that the

1

defamatory statements made by Defendants' former counsel to various third parties are shielded from liability under the doctrine of "absolute judicial privilege."  Fifth, the Court should exclude from trial two witnesses that Defendants have designated on their witness list that have never previously been identified in discovery.  Six, Velocity Micro moves to exclude Defendants' mass discovery designations as improperly pled.  All issues are ripe for resolution on this motion.

**A**RGUMENT

### I.      The applicable legal standards.

The basic rule of evidence is that evidence must be relevant to be admissible.  Fed. R. Evid. 402.  The Federal Rules of Evidence define relevant evidence as evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  And, if an item of proof tends to prove a fact that is of consequence to the determination of the action, it is relevant, but it remains subject to exclusion under Fed. R. Evid. 403.

With these rules in mind, "[t]he purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."  *Colon v. Porliar*, 2012 U.S. Dist. LEXIS 110624, at *1-2 (N.D.N.Y Aug. 7, 2012) (citing *Luce v. United State*s, 469 U.S. 38, 40 n. 2 (1984)); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.").  Put another way, a motion *in limine* is a remedy designed to "increase trial efficiency and promote improved accuracy of evidentiary determinations by virtue of the more thorough briefing and argument of the issues that are possible prior to the crush of trial."  *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.*, 505 F. Supp. 1125, 1140 (E.D. Pa. 1980).

2

II.     **The Court should prevent Defendants from making any statement that they did not contact third parties after the termination of the Agreement while purporting to be acting on behalf of Velocity Micro.**

Based on the deposition testimony of Hertensteiner, Velocity Micro anticipates that Defendants will attempt to argue at trial that they did *not* represent to third parties after the Agreement was terminated on July 5, 2011 that they were still acting on behalf of Velocity Micro.  The Court should preempt any such testimony.

In paragraph 38 of its Amended Complaint, Velocity Micro alleged as follows:  "J.A.Z., through Hertensteiner, has also informed certain customers of Velocity Micro that J.A.Z. remains the marketing representative for Velocity Micro, notwithstanding Velocity Micro's termination of the Agreement."  (Dkt. No. 38, ¶ 37.)  In response to this allegation, Defendants stated that this allegation was "affirmed."  (Dkt. No. 51, ¶ 37.)  Similarly, in the initial Complaint, Velocity Micro made that exact same allegation.  (Dkt. No. 1, ¶ 35.)  Again, Defendants responded to that factual allegation as "affirmed."  (Dkt. No. 14 ¶ 35.)

It is a "well-settled rule that a party is bound by what it states in its pleadings."  *Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).  Thus, it has long been held that allegations "which a defendant admits in his answer [are] binding upon him until he withdraws the admission by a proper amended or supplemental pleading."  *Freedom National Bank v. Northern Illinois Corp.*, 202 F.2d 601, 605 (7th Cir. 1953); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them."); *State Farm Mutual Automobile Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968); *Best Canvas Prod. & Supplies v. Ploof Truck Lines*, 713 F.2d 618, 621 (11th Cir. 1983).

Accordingly, courts have consistently ruled *in limine* to prevent a party from offering evidence at trial that is contrary to their admissions in their pleadings.  *See, e.g., Spina v. Forest*

3

*Pres.*, 2001 U.S. Dist. LEXIS 19146, at *30 (N.D. Ill. Nov. 22, 2001) ("Defendants, with the exception of Officer Jones, made this admission in their Answer to Plaintiff's Complaint. Defendants are bound by this judicial admission and are prevented from introducing evidence to the contrary.") (internal citations omitted).

Defendants have twice affirmed the validity of the factual allegations detailed above. They also have never sought leave to amend their pleading to change that admission, and it is far too late to do so now.  Thus, consistent with the above authority, the Court should rule *in limine* barring Defendants from introducing any evidence contrary to their admission that "J.A.Z., through Hertensteiner, has also informed certain customers of Velocity Micro that J.A.Z. remains the marketing representative for Velocity Micro, notwithstanding Velocity Micro's termination of the Agreement."

III.   **The Court should bar any reference to the unexecuted 2011 putative contract between Velocity Micro Electronics and J.A.Z. as a basis for J.A.Z.'s contractual claims against Velocity Micro.**

In his deposition testimony, Hertensteiner made repeated reference to the fact that J.A.Z. was allegedly entitled to seek payment from Velocity Micro with respect to J.A.Z.'s claim for breach of contract under an unexecuted 2011 draft contract between J.A.Z. and Velocity Micro Electronics, Inc. ("VME"), a third party that was dismissed from this case by the Court in July 2012.  J.A.Z. attached this unexecuted contract as Exhibit B to its Counterclaim against Velocity Micro and VME.  (Dkt. No. 14-3.)

On the basis of this unexecuted contract, J.A.Z. previously sought to state claims for "unjust enrichment" against VME.  (Dkt. No. 14.)  Because the unexecuted contract between J.A.Z. and VME was never operative, VME moved to dismiss the claim for unjust enrichment. (*See* Dkt. Nos. 40 and 41.)  In dismissing that claim, this Court held:

> This "oral agreement," as J.A.Z. concedes, was in fact a written agreement that
> was proposed in February 2011 but never actually executed.  J.A.Z. argues that

4

Hertensteiner, "[b]elieving that the offer of contract was adequate as an oral agreement, . . . did not execute the contract offered by Foxconn and VME." J.A.Z. now claims to be entitled to compensation for the value added to VM because, despite not having finalized the contract, it "continued to perform the work specified in the contract."

There are several obvious flaws with J.A.Z.'s position. First of all, the non-executed written agreement that J.A.Z. considers "adequate" to prove the existence of an oral contract contains spaces where the parties were clearly supposed to sign. The evident need for signatures is only reinforced by the email in which the contract was attached, where the Foxconn representative writes, "Dear John, . . . Please see attached contact [sic] between VME and JAZ and sign them [sic] soon. [W]e will pay 2.5% commission to you (JAZ) directly from March." Thus, the lack of a signed instrument is evidence not of an adequate oral agreement but rather an offer that was rejected, if only through inaction.

*** 

Even after VME allegedly "induced [J.A.Z.] to continue working by offering a contract and allowing [J.A.Z.] to labor under the assumption an 'oral contract' had been created," J.A.Z., by its own admission, did not receive payments from Foxconn or VME, but instead continued to receive commissions directly from VM. J.A.Z. also never sent any invoices to VME, as it was obligated to do by the "oral contract."

(Dkt. No. 57 pp. 14-15.)

Through this opinion, this Court ruled that the unexecuted contract between J.A.Z. and VME was without force and effect between those purported signatories; a fact that necessarily discredits any contention that the draft contract was in effect between J.A.Z. and *Velocity Micro*. Therefore, the Court should exclude any reference to the alleged "oral agreement" between VME and J.A.Z. at trial, as it has already been established that there was no such agreement in the first instance. *See, e.g., Wash. v. Thurgood Marshall Acad.*, 2006 U.S. Dist. LEXIS 88852, at *28-29 (D.D.C. Dec. 8, 2006) (granting motion *in limine* to exclude evidence regarding "issues already decided by the Court"); *see also Hein v. Cuprum, S.A.*, 2002 WL 34453309, at *1 (S.D.N.Y. Jan. 23, 2002) (denying motions *in limine* concerning expert witness where defendant had pressed the same arguments in a prior summary judgment motion).

5

Moreover, any attempted reference to the unexecuted 2011 contract between J.A.Z. and VME as a basis for J.A.Z.'s claim for breach of contract against Velocity Micro must also be rejected due to the fact that J.A.Z. has already admitted in response to Velocity Micro's First Requests for Admission that "all work performed for [Velocity Micro] was under the terms of the [Agreement]."  **Exhibit A**, No. 11.  This admission is binding on J.A.Z. and no deviation from it should be permitted at trial.  *See, e.g.*, *Keller*, 58 F.3d at 1194.

Finally, any claim to compensation from Velocity Micro under the alleged draft contract between J.A.Z. and VME fails for an even more fundamental reason.  Namely, that agreement is alleged to have been only between VME and J.A.Z.  (*See, e.g.*, Dkt. No. 14-1 ¶¶ 16-17.)  It is axiomatic that a claim for breach of contract may be brought only against a party to a contract or its privy, and Velocity Micro is never alleged to have been a party to the unexecuted contract between VME and J.A.Z.  *See, e.g.*, *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004) (a breach of contract claim requires a legally enforceable obligation between the parties).  For all these reasons, any reference to the alleged "oral" contract between VME and J.A.Z. should be excluded at trial as irrelevant to the pending claims between Velocity Micro and J.A.Z.

### IV.    The Court should exclude Defendants' proposed Exhibit Nos. 2 and 3.

On its Exhibit List, Defendants list two documents allegedly setting forth "sales" figures that they will presumably try to use relative to their one remaining claim for breach of contract: Exhibit Nos. 2 and 3.  (Dkt No. 74).  Both of these exhibits are straightforwardly inadmissible.

### A.  Exhibit No. 2 is inadmissible as it is not a business record capable of authentication, and also because its probative value, if any, is outweighed by the danger of unfair prejudice.

Exhibit No. 2 (**Exhibit B**) is inadmissible for at least three independent reasons.  First, Hertensteiner testified in his deposition that this document was prepared after litigation was commenced, when it was attached as an exhibit to the Complaint that was filed against Velocity

Micro in Minnesota and then transferred to this Court.  (*See* Hertensteiner Tr. p. 116:13-20,
**attached as Exhibit C**.)  Therefore, because Exhibit No. 2 was prepared in anticipation of
litigation, it is hearsay and does not constitute a business record.  *See, e.g.*, *Certain Underwriters
at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 209 (4th Cir. 2000) ("The absence of
trustworthiness is clear, however, when a report is prepared in the anticipation of litigation
because the document is not for the systematic conduct and operations of the enterprise but for
the primary purpose of litigating.").  Hence, it is inadmissible.

Second, Hertensteiner testified in his deposition that he was not aware of how Exhibit
No. 2 was created,[1] as it was created by former employee Sandy Nelson.  (Hertensteiner Tr. p.
119:2-17.)  In particular, Hertensteiner testified that only Ms. Nelson knows what documents
were reviewed in order to create Exhibit No. 2.  *Id.*  Ms. Nelson, however, has not been listed as
a proposed witness on Defendants' Exhibit List, and she will not be attending trial.  (*See* Dkt.
No. 75.)  Exhibit No. 2, therefore, cannot be authenticated, *see* Fed. R. Evid. 901, nor could the
requisite foundation be laid to introduce that document as a business record.  *See* Fed. R. Evid.
602 (a witness may not testify to a matter unless "evidence is introduced sufficient to support a
finding that the witness has personal knowledge.").  It is, therefore, inadmissible at trial.

Third, even if Exhibit 2 were able to somehow qualify as an admissible business record,
it should be excluded under Fed. R. Evid. 403.  At his deposition, Hertensteiner testified that the
figures on Exhibit No. 2 reflect "sales data."  (Hertensteiner Tr. p. 120:18-24.)  However, the
Agreement states that the relevant benchmark to determine the amount of commissions owed to
J.A.Z. is based on the amount of money that Velocity Micro "collects" from the relevant
retailers, not the amount of sales to those retailers.  **Exhibit D ¶ 4 (the Agreement).**  Therefore,
Exhibit No. 2 simply uses an invalid metric to advance any claim for breach of contract against

---

[1] Exhibit No. 2 was introduced as Exhibit No. 9 during the deposition of Hertensteiner and is referred to
as such throughout the deposition transcript.

Velocity Micro, and it is altogether irrelevant to that inquiry.  Further, Hertensteiner admitted that the figures reflected on Exhibit No. 2. are merely "estimates" of sales data and not reflective of actual sales data.  (Hertensteiner Tr. p. 121:15-20.)  At bottom, therefore, given the estimated nature of these figures, as well as their irrelevance to the calculation of any commissions owed, Exhibit 2 must be excluded due to its lack of probative value and potential for jury confusion.

**B.  Exhibit No. 3 must be excluded as it suffers from the same infirmities as Exhibit No. 2 and was never produced during the course of discovery.**

Exhibit No. 3 (**Exhibit E**) is yet another iteration of Defendants' attempt to introduce "sales data" that is both irrelevant and incapable of authentication given Defendants' concession that they will not be calling Ms. Nelson as a witness at trial.  Fundamentally, Exhibit No. 3 suffers from the same evidentiary deficiencies set forth above with respect to Exhibit No. 2, and it should be excluded for all of the same reasons.

However, the proposed introduction of Exhibit No. 3 also suffers from a more basic issue requiring exclusion.  Namely, Exhibit No. 3 was *never produced in discovery* despite numerous timely served requests for production seeking, *inter alia*: (1) all documents from Defendants that supported Defendants' claim for breach of contract; (2) all documents reflecting any "sales" data; and (3) all documents relating to Defendants' claim for "damages."  **Exhibit F** (Velocity Micro's Requests for Production).  Indeed, the first time that the existence of this document was ever made known to Velocity Micro was when it was attached on August 16, 2012 to Defendants' reply memorandum in support of their Motion for Summary Judgment.  And, given that Exhibit No. 3 was never produced in discovery, Velocity Micro was unable to explore its substance, including during the deposition of Hertensteiner, thereby generating substantial prejudice and unfairness.  Regardless of its substantive inadmissibility, therefore, this document must be excluded from trial.

**V.      Any assertion of judicial privilege with respect to the July 7, 2012 email from J.A.Z.'s then counsel to both Foxconn and Velocity Micro must be excluded.**

On July 7, 2011, counsel for J.A.Z. wrote to officials at Velocity Micro and third-party Foxconn stating:

> This letter is your notice of claim and notice of intent to pursue litigation.
>
> I have reviewed a February 22, 2011 Sales Agreement ("Sales Representative Agreement") between Velocity Micro Electronics, Inc. and J.A.Z. Marketing, Inc. I have also reviewed a July 5, 2011 communication from Mr. Randall P. Copeland to my clients' retail customers, which communication purports to terminate the Sales Representative Agreement.
>
> Preliminary information suggests that Mr. Copeland and VME have chosen to widely disseminate the purported termination notice to the U.S.A. electronics trade, all to the detriment of my clients' reputation in the electronics market place.
>
> My clients believe that Mr. Copeland's purported notice of termination notice, among other things, is not in compliance with the specific terms of the Sales Representative Agreement; that it was issued without the proper authorization of the owners and management of VME; that it constitutes tortious interference with JAZ's Sales Representative Agreement; that it, by implication, wrongfully disparages my clients; and that they have thereby suffered monetary damages.

**Exhibit G** at pp. 1-2; (Dkt. No. 14 ¶ 27).

Velocity Micro claims that it has been defamed by J.A.Z. through J.A.Z.'s publication of the statements in this letter contending that Velocity Micro: (1) breached the contract through the termination; (2) tortiously interfered with J.A.Z.'s business expectancies through the termination of the agreement; and/or (3) defamed J.A.Z. through providing third parties with notice that the Agreement had been terminated.  In response to this claim, Defendants have recently contended that these defamatory statements are entitled to "absolute judicial privilege."  (*See* Dkt. No. 60 at p. 6.).  This legal contention fails for a number of reasons.[2]

---

[2] Velocity Micro previously made this same argument in its reply memorandum in support of its Motion for Summary Judgment, on which the Court has yet to rule.  (*See* Dkt. No. 65 pp. 7-10.)  Velocity Micro again makes this argument for purposes of preserving the record and its objections in this regard prior to the deadline for filing this Motion *in Limine* under the deadlines set by the Court's Initial Pretrial Order.

As a threshold matter, the invocation of this affirmative defense is improper at trial, as no such defense was pled in the Answer to either of the Complaints filed against Defendants.  It is well settled that the invocation of privilege with respect to a state law claim for defamation is an affirmative defense that must be pled in a party's answer to avoid the waiver of that defense. *See, e.g., McIntosh v. Partridge*, 540 F.3d 315, 326 (5th Cir. 2008) ("[Q]ualified privilege is an affirmative defense . . . and Partridge failed to raise it in his answer as required by Rule 8(c)."); *cf. Chaves v. Johnson*, 230 Va. 112, 121, 335 S.E.2d 97, 103 (1985) (holding that absolute privilege is an "affirmative defense" to a claim for defamation).  This is particularly true here, where Defendants *never* previously raised a claim of judicial privilege during the course of discovery, notwithstanding the fact that the decision in *Mansfield v. Bernabei*, 284 Va. 116, 727 S.E.2d 69 (2012), on which Defendants base their argument, was decided three weeks *before* Defendants filed their Answer to the Amended Complaint, and over five weeks *before* the close of discovery.  (Indeed, Defendants still have never moved to amend their Answer to assert this affirmative defense, which plainly would be untimely now given the advanced state of this case.) And, with discovery now closed, Velocity Micro lacks the ability to test through additional discovery certain factual elements of such an assertion (*e.g.*, whether Defendants were subjectively contemplating litigation in "good faith" at the time that the letter was sent).  Thus, this new claim of "absolute judicial privilege" comes in a posture that is highly prejudicial to Velocity Micro and its assertion is procedurally barred.

Assuming that such a defense could procedurally be asserted for the first time at this late juncture of the case, it would also substantively fail.  In support of the claim of absolute judicial privilege, Defendants cite to the recent decision of the Supreme Court of Virginia in *Mansfield v. Bernabei*, where the Court held:

> [Judicial privilege] requires a reviewing court to examine whether: (1) the statement was made preliminary to a proposed proceeding; (2) the statement was

related to a proceeding contemplated in good faith and under serious consideration; and (3) the communication was disclosed to interested persons.

In this case, Ford's draft complaint containing the allegedly defamatory statements about Mansfield was marked "For Settlement Purposes Only." The demand letter accompanying the draft complaint stated that if a response was not received, Ford would "initiate a formal legal action" against the potential defendants to whom the letter and complaint were addressed. Ford did, in fact, file a substantially similar complaint in the United States District Court for the Eastern District of Virginia approximately one week after sending the draft complaint and demand letter.

*Id.* at 124-25, 727 S.E.2d at 70. On the basis of these facts, the Court upheld the privilege. *Id.*

The holding in *Mansfield* is starkly different from the facts before the Court here. First, unlike the approximately one week delay in *Mansfield*, no complaint was filed by the Defendants until approximately *five months* after the sending of the letter in question. (*See* 3:12cv245, Dkt. No. 1-2.) This lengthy delay compels the rejection of any claim that the letter was sent in the context of a "proposed proceeding." Indeed, although Defendants' counsel the stated that the proposal outlined therein would expire on July 8, 2011, no legal action was commenced at that time. (Pltfs' Mem. at Ex. H.) Further, nothing in the letter indicated that it was "for settlement purposes only." *Id.* Also, unlike the sending of a draft complaint in *Mansfield*, the July 7, 2011 letter, which attached no such draft pleading, fails to delineate any of the specific factual or legal bases for its claims, instead speaking in the most general (and confusing) of terms regarding Velocity Micro's alleged breach of contract and commission of torts. *Id.* That fact, especially when coupled with Defendants' completely unfounded demand of $5 million, demonstrates that this letter was not actually "related to a proceeding contemplated in good faith and under serious consideration," as the Supreme Court of Virginia required in *Mansfield*. *See id.*

Indeed, the facts present here are far more analogous to the prior decision of the Supreme Court of Virginia in *Lindeman v. Lesnick*, 268 Va. 532, 604 S.E.2d 55 (2004), where the defendant patient's argument was that the defamatory statements regarding a physician were

made by the patient to his attorney and were therefore privileged, irrespective of the lack of any solidified intention to litigate at the time that the statements were made. *Id.* at 535, 604 S.E.2d at 56-57.  In flatly rejecting this argument, the Court held that "[t]o accept Lindeman's assertions would require this Court to extend the absolute privilege to mere potential litigation.  We decline to do so.  The logical extension of Lindeman's contentions would effectively erode the absolute privilege to permit defamatory communications to be made with impunity merely upon an assertion that litigation might be subsequently initiated." *Id.*  Likewise, the substance of the July 7 letter, when coupled with the lack of any lawsuit against Velocity Micro for a period of five months after the letter was sent, demonstrates that, at most, "mere potential litigation" existed at the time that the letter was sent, which is insufficient to invoke the privilege as a matter of law.

### VI.   The Court should exclude the participation of two putative witnesses at trial who have never previously been identified by Defendants.

On their witness list, Dkt. No. 75, Defendants identified three individuals as witnesses that they may call at trial whose attendance should be rejected.  These individuals are Terri Hertenstener (who presumably is related to Hertensteiner) and Darlene Anthony and Chip Lowell (both of Velocity Micro).

As required under the Federal Rules of Civil Procedure, Defendants served their Rule 26(a)(1) initial disclosures identifying "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1).  Neither Ms. Hertensteiner, Ms. Anthony, nor Mr. Lowell were identified by Defendants as such.  **Exhibit H.**  Furthermore, during discovery, Defendants were asked to identify all individuals with knowledge of their claims and defenses.  In response to that interrogatory, Defendants failed to identify Ms. Hertensteiner, Ms. Anthony, or Mr. Lowell.  *See* **Exhibit I**.  That fact precludes any of those three witnesses from being called by Defendants at

trial. *See, e.g., Saewitz v. Lexington Ins. Co.*, 2003 U.S. Dist. LEXIS 27568, at *5 (S.D. Fla. Oct. 20, 2003) ("In this case, Defendant has made none of these disclosures during the discovery period, and has waited until September 18, 2003, namely a month before the pretrial conference and a mere six weeks before trial, to identify Mr. Nichols, Mr. Krekeler, and Mr. Lesser as [proposed witnesses].  Such behavior has been appropriately described as a "sneak attack," which the undersigned will not tolerate.") (internal citations omitted); *accord Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001).

## VII.   The Court should strike Defendants' mass discovery designations.

Finally, the Court should strike Defendants' discovery designations as improperly pled. In their discovery designations, Defendants have designated essentially the entire transcript for the depositions of both Randall Copeland and Patteson Branch, both of whom are executives of Velocity Micro.  (Dkt. No. 73.)  This "mass" designation of hundreds of pages, which includes entire passages of hearsay and irrelevant testimony, is entirely contrary to the spirit of such permitted designations, and it represents an attempt to unfairly shield from review those portions of the transcript that Defendants actually intend to introduce at trial.[3]

### CONCLUSION

For the foregoing reasons, Randall P. Copeland and Velocity Micro, Inc., respectfully request that the Court: (1) grant their Motion *in Limine*; (2) award them their reasonable attorney's fees incurred herein; and (3) grant them any further relief that the Court deems proper.

**VELOCITY MICRO, INC. and**
**RANDALL P. COPELAND**


By: /s/ Timothy J. St. George
       Of Counsel

---

[3] Defendants' designations can be sharply contrasted with the designations of Velocity Micro, *see* Dkt. No. 69, which are surgical in nature and embrace relevant testimony.

13

Dabney J. Carr, IV, Esq. (VSB No. 28679)
Timothy J. St. George (VSB No. 77349)
TROUTMAN SANDERS LLP
Post Office Box 1122
Richmond, VA  23218-1122
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
dabney.carr@troutmansanders.com
tim.stgeorge@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2012, I sent a true and correct copy of the foregoing by hand delivery to:

>Gregory Cassis, Esq.
>CROWGEY & GROSSMAN
>1108 E Main St, Suite 600
>Richmond, VA 23219
>804-788-1700
>glcassis@gmail.com

>*Counsel for J.A.Z. Marketing, Inc. and John Hertensteiner*

>/s/ Timothy J. St. George
>Timothy J. St. George (VSB Bar No. 77349)
>TROUTMAN SANDERS LLP
>1001 Haxall Point
>Richmond, Virginia  23219
>Telephone:  (804) 697-1254
>Facsimile:  (804) 698-6013
>tim.stgeorge@troutmansanders.com

>*Counsel for Velocity Micro, Inc. and Randall P. Copeland*

20082436v1